UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUSTIN AIR SYSTEMS, LIMITED,

                          Plaintiff,

v.                                                **DECISION AND ORDER**
                                                       12-CV-135S

BANK OF AMERICA CORPORATION, BANK
OF AMERICA, N.A., and BANC OF AMERICA
MERCHANT SERVICES, LLC,

                          Defendants.

## I. INTRODUCTION

Plaintiff Austin Air Systems, Ltd., commenced this action seeking damages for Defendants' alleged breach of a credit card processing agreement and fraudulent inducement of that contract. Presently before this Court is the motion of Defendants Bank of America Corporation, Bank of America, N.A., and Banc of America Merchant Services, LLC to either dismiss the complaint or stay the action and compel arbitration. This Court finds the matter fully briefed and oral argument unnecessary. For the reasons that follow, Defendants' motion is granted and the complaint is dismissed.

## II. BACKGROUND

Plaintiffs manufacture and sell commercial and consumer air purification systems. (Compl. ¶ 8, Docket No. 1-1.) In August 2004, Defendants presented Plaintiff with a proposal for credit card processing services. (Id. ¶ 14.) Based on that proposal, Plaintiff entered into an agreement with Defendants on September 14, 2004. (Id. ¶ 16.) A one

1

page Merchant Services Account Application, signed by Plaintiff's president, contained the following paragraph under the heading "Agreement Signatures":

> By signing below, the Merchant named above (1) certifies that all information and documents submitted in connection with this Application are true and complete; (2) **acknowledges receipt of the Bank of America, N.A. Merchant Services Agreement** ("Agreement"); (3) agrees that Merchant and each transaction submitted to Bank of America, N.A. ("Bank") will be bound by that Agreement; (4) agrees that Merchant will submit transactions to Bank only in accordance with information in this Application and will immediately inform Bank as required in the Notices section of the Agreement if any information in this Application changes; (5) agrees that American Express Travel Related Services Company, Inc. ("Amex") will send a Welcome Letter and the Terms and Conditions for American Express® Card Acceptance to Merchant after Amex approves Merchant to accept the Amex Card and other account access devices issued by Amex, or its subsidiaries or affiliates or its or their licensees bearing the Amex name or an Amex trademark, service mark or logo ("Card or Cards"), and that by accepting Amex Cards, Merchant agrees to be bound by those terms and conditions; (6) **agrees to the Fee Schedule provided to the Merchant**; and (7) agrees that this application is subject to approval by Bank, and Amex.  Your signature authorizes Bank and Amex each to verify any of the information given including credit references; to obtain credit reports on the business and each of you individually, including Guarantors; and authorizes Bank to share or provide this information with Bank's affiliates.

(Stipulation[1] ¶ 1, Ex. 1, Docket No. 26 (emphasis added); Compl. Ex. B.)

According to Defendants, the "Merchant Services Agreement" referenced in the above paragraph refers to a separate 66-page document containing the following arbitration clause:

> **Section 17.  ARBITRATION AND WAIVER OF JURY TRIAL**
>
> Any claim or controversy ("Claim") between you and us, whether arising in contract or tort or by statute including, but not limited to, Claims resulting from or relating to this Agreement shall, upon request of either party, be resolved by binding arbitration in accordance with the Federal Arbitration Act

---

[1] Pursuant to this Court's order, the parties' filed a stipulation as to certain language contained in the documents at issue, as the original exhibits filed were illegible.

> (Title 9, US Code). . . . By agreeing to binding arbitration, the parties irrevocably and voluntarily waive any right they may have to a trial by jury in respect of any Claim.  Furthermore, if for any reason a Claim is not arbitrated, the parties irrevocably and voluntarily agree to waive any right to a trial by jury in respect of such Claim.

(Decl. of Sandra Turner Ex. A at 23, Docket No. 17.)

In contrast, Plaintiffs assert that the entirety of the agreement between the parties consists of three pages, and that "Merchant Services Agreement" refers to a two-page document entitled "MERCHANT SERVICES AGREEMENT" and subtitled "Fee Schedule." (Compl. Ex. B.; Pl's Mem of Law in Opp'n at 4-5, Docket No. 22.) This document lists the rates for processing fees, service fees, and product fees. (Compl. Ex. B.) The following language appears under the heading "Pricing Acknowledgement" [*sic*] on page two:

> I have reviewed the above fee structure of my Bank of America, N.A. ("Bank") merchant services account.  I understand that the above stated pricing for Visa/MasterCard is based on a minimum threshold of an average transaction size of $281 and an annualized Visa/MasterCard sales volume of $1,014,000.  The rates and fees quoted by the Bank for acceptance of the American Express Card and Discover Card/NOVUS Card brands are subject to the terms and conditions for each respective Card Issuer.
>
> I further understand that the Bank will review those assumptions after a period of actual processing and that my rate could be increased if either the average ticket or volume run rates are lower than the minimum thresholds.  In addition, the Bank may pass on charges imposed by credit card associations, such as Visa and MasterCard, resulting from my failure to comply with credit card regulations.  Th[e] Bank may collect these charges in the same way as other amounts owed by me under the Merchant Services Agreement ("Agreement").  I acknowledge that the Agreement provides for increases in fees.  I understand that my application is subject to approval by the Bank and by American Express and Discover Card/NOVUS Card Issuers for processing their transactions.

(Stipulation ¶ 3, Ex. 2.)  This document was also signed by Plaintiff's president, as well as a representative of Defendant Bank of America, N.A. (Id.)

Plaintiff commenced an action in New York State Supreme Court, Erie County, in

January 2012, asserting causes of action for breach of contract and fraudulent inducement to contract. Defendants removed the matter to this Court, asserting diversity jurisdiction, and now move to either dismiss the complaint or stay the matter pending arbitration.[2]

### III. DISCUSSION

"In the context of motions to compel arbitration brought under the Federal Arbitration Act ('FAA'), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citing Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n. 9 (3d Cir.1980)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. (citing 9 U.S.C. § 4). "Whether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.' " Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (quoting National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996)). "While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., __ U.S. __, 130 S.Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (internal citations and quotation marks omitted); Schnabel v. Trilegiant Corp., __ F.3d __, 2012 WL 3871366, *6 (2d Cir. 2012) (existence of

---

[2] In support of their motion (Docket No. 16), Defendants submit the Declaration of Sandra Turner with Exs. A-C (Docket No. 16) and a supporting Memorandum of Law (Docket No. 18.) Plaintiffs responded with the Affidavit of Richard Taylor with Exs. A-B (Docket No. 21) and an opposing Memorandum of Law (Docket No. 22). Defendants filed a reply Memorandum of Law (Docket No. 23).

agreement to arbitrate is question of state law). Specifically, a party may not be compelled under the FAA to submit to arbitration "unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen S.A., 130 S. Ct at 1775; Ross v. American Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008).

Here, a contractual basis exists for compelling arbitration if, as Defendants argue, the 66-page document entitled 'Merchant Services Agreement' was incorporated by reference into the documents signed by Plaintiff's president. "Whether an extrinsic document is deemed to be incorporated by reference is a matter of law." Sea Trade Co. Ltd. v. FleetBoston Fin. Corp., No. 03–CV–10254, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007).

> Under New York law[3] and the law of this Circuit, two essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement. First, the agreement must specifically reference and sufficiently describe the document to be incorporated, such that the latter "may be identified beyond all reasonable doubt." Second, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms."

Ryan, Beck & Co., LLC. v. Fakih, 268 F. Supp. 2d 210, 223 (E.D.N.Y. 2003) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996)(internal citations omitted and emphasis removed)). "When a contract clearly identifies a single document, it eliminates all reasonable doubt and thus qualifies as an effective incorporation." 4Connections LLC v. Optical Comm'ns Group, Inc., 618 F. Supp. 2d 178, 183 (E.D.N.Y.

---

[3]In their supporting Memorandum of Law, Defendants reference the choice of law provision found in an amendment to the 66-page Merchant Services Agreement indicating that North Carolina law governs. (Docket No. 18 at 9-10). In response to Plaintiff's opposing arguments, however, Defendants rely on New York State law concerning incorporation by reference. (Docket No. 23.) This assumption by the parties that New York law controls this issue constitutes implied consent, and is sufficient to establish choice of law. Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

2009). "A party's failure to read the terms of an incorporated document does not make those terms any less binding." Id. at 183-84 (citing PaineWebber Inc., 81 F.3d at 1201).

Plaintiff does not dispute that the Merchant Services Account Application signed by its president incorporates by reference a separate document entitled Merchant Services Agreement. (Pl's Mem of Law in Opp'n at 10-11.) Plaintiff argues, however, that Account Application references only the two-page document subtitled "Fee Schedule," and Defendants' attempt to now substitute the terms of the 66-page agreement is an improper 'bait-and-switch.' (Id.) This Court disagrees. As argued by Defendants, the plain language of the Account Application makes clear that the "Merchant Services Agreement" and the "Fee Schedule" are two separate documents. By signing the Account Application, Plaintiff was both "acknowledg[ing] receipt" of the former and agreeing to the rates set by the latter. (Stipulation ¶ 1, Ex. 1.) This document also states that the Member Services Agreement includes a "Notices section" that describes the requirements for submitting changes to the information contained in the application. (Stipulation ¶ 1, Ex. 1.) The Fee Schedule, despite the appearance of the words "Merchant Services Agreement" at the top, does not contain a 'Notices' provision; instead, the information therein is limited to processing fee, service fee, and product fee rates. (Compl. Ex. B.) Moreover, the Fee Schedule itself also references a separate Merchant Services Agreement. In the section headed 'Pricing Acknowledgment,' which Plaintiff does not dispute is part of the agreement between the parties, it is stated that "[t]he Bank may collect these charges in the same way as other amounts owed by [Plaintiff] under the Merchant Services Agreement ('Agreement'). [Plaintiff] acknowledge[s] that the Agreement provides for increases in fees." (Stipulation ¶ 3, Ex. 2; Compl. Ex. B.) Thus, at the time these documents were signed, Plaintiff was

clearly on notice of a third, separate document containing additional contractual terms.

Accordingly, the Court finds that the 66-page Merchant Services Agreement, including the arbitration clause found therein, is incorporated by reference into the Account Application and Fee Schedule. Any failure to read the terms of that incorporated agreement does not make them any less binding. 4Connections, 618 F. Supp. 2d at 183.

The question remains whether to dismiss the complaint or stay the action and compel arbitration. "Although section 3 of the FAA requires a federal court to stay an action to resolve a dispute subject to an arbitration agreement, courts have the discretion to dismiss – rather than stay – an action when all of the issues in it must be arbitrated." Milgrim v. Backroads, Inc., 142 F.Supp.2d 471, 476 (S.D.N.Y.,2001), *aff'd* 91 Fed. Appx. 702 (2d Cir. 2002). There can be no question that Plaintiff's breach of contract claim falls within the broad scope of the arbitration clause at issue, which covers "[a]ny claim or controversy. . . between you and us, whether arising in contract or tort or by statute including, but not limited to, Claims resulting from or relating to this Agreement." (Turner Decl. Ex. A at 23.) With respect to Plaintiff's second cause of action, "the Supreme Court has held that an agreement to arbitrate is effective with respect to claims of fraudulent inducement that relate to the contract generally, but not to the agreement to arbitrate specifically." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 188 (2d Cir. 2007); see Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L. Ed. 2d 1270 (1967). In contrast, "if the claim is fraud in the inducement *of the arbitration clause itself* – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it." Prima Paint Corp., 388 U.S. at 403-04 (emphasis added). Here, Plaintiff alleges that Defendants misrepresented their credit card

processing fees. (Compl. ¶¶ 32-34.) Thus, the fraudulent inducement claim relates "to the contract generally, but not to the agreement to arbitrate specifically." Merrill Lynch & Co. Inc., Inc., 500 F.3d at 188. Dismissal is therefore warranted. Milgrim, 142 F. Supp. 2d at 476.

## IV. CONCLUSION

For the reasons stated above, this Court finds that the Merchant Services Agreement containing the arbitration clause is incorporated by reference into the Account Application and Fee Schedule signed by Plaintiff. Further, because all of Plaintiff's claims fall within the scope of the arbitration clause, this Court exercises its discretion to dismiss the complaint.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED and the complaint is dismissed;

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: September 28, 2012
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Judge